

U.S. Department of Justice

United States Attorney

District of Maryland

Zachary A. Myers
Assistant United States Attorney
Zachary.Myers@usdoj.gov

Suite 400
36 S. Charles Street.
Baltimore, MD 21201-3119

DIRECT: 410-209-4848
MAIN: 410-209-4800
FAX: 410-962-0716

January 13, 2016

By e-mail
Michael D. Montemarano
10630 Little Patuxent Pkwy, Suite 146
Columbia, MD 21044

    Re:    United States v. Jonathan M. Went,
             Criminal No. GLR-14-00384

Dear Mr. Montemarano:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by close of business on January 14, 2016, it will be deemed withdrawn.

    The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Superseding Indictment which charges the Defendant with Conspiracy to Commit Sex Trafficking of a Child, in Violation of Title 18, United States Code, Section 1594(c). The Defendant admits that the Defendant is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    The defendant conspired with one or more other persons to knowing recruit, entice, harbor, transport, provide or obtain a person that defendant knew was less than eighteen years old- or had reasonable opportunity to observe and in reckless disregard of the fact that the victim was less than 18 years old[1] and that force, fraud or coercion would be used;

---

[1] Both parties acknowledge a typographical error in the charging language of Count One and agree that the Court can correct the error at the time of the plea. Specifically, Count One charges

        b.      The defendant knew that the person would be caused to engage in a commercial sex act; and,

        c.      The recruiting, enticing, harboring, transporting, providing or obtaining was done in or affecting interstate commerce.

## Penalties

3.      The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for any term of years or for life, followed by a term of supervised release of not less than five (5) years up to the lifetime of the defendant and a fine of up to $250,000.

4.      In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if the Defendant serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, the Defendant's supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

5.      The Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to Title 18, United States Code, Section 2250.

---

a conspiracy to violate Title 18, United States Code, Section 1591(a), sex trafficking, in violation of Title 18, United States Code Section 1954(c). The government must prove that the defendant acted knowingly, or in reckless disregard of the fact, that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." The typographical error is that Count One states that "the person has not attained the age of 14 years." Although there is an increased mandatory minimum in Section 1591(b) if the victim is less than 14 years of age (and the jury must make a special finding of same), the elements of the crime are that the defendant must know or be in reckless disregard of the fact that the victim is less than 18 years old. Correction of a typographical error which goes to form rather than the substance of the indictment is permissible. *United States v. Morrow*, 925 F.2d 779, 781-782 (4th Cir. 1991); *see also United States v. Allmendinger*, 706 F.3d 330 (4th Cir. 2013) ("Indictment can be amended without further consideration by grand jury when it is necessary to strike surplusage or to correct indictment's form.")

2

## Waiver of Rights

6. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Superseding Indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If the Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

    f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and

about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      h.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

      i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

7.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

8.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

      a.      **Base Offense Level:** This Office's position is that the base offense level is 34 pursuant to U.S.S.G. §§ 2G1.3(a)(1) and 2X1.1(a). The Defendant's position is that the base offense level should be 24 pursuant to U.S.S.G. §2G1.3(a)(4).

      b.      **Undue Influence:** This Office's position is that a 2 level enhancement applies, pursuant to U.S.S.G. § 2G1.3(b)(2)(B), because a participant in the offense unduly influenced a minor to engage in prohibited sexual conduct. The Defendant objects to this increase.

      c.      **Use of Computer:** Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), a 2 level enhancement applies, because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.

*[Handwritten annotation:]* MITIGATING ROLE: DEFENDANT WILL ARGUE FOR A ROLE REDUCTION⁴ UNDER USSG § 3B1.2. ZAM MDM JW

        d.      **Sex Act:** Pursuant to U.S.S.G. § 2G1.3(b)(4), a **2** level enhancement applies, because the offense involved the commission of a sex act or sexual contact.

        e.      This Office does not oppose a **2** level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1** level decrease in recognition of the Defendant's timely notification of his intention to plead guilty provided that the plea **is accepted by January 14, 2016.** This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about your client's involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw the plea of guilty.

9.      Accordingly, the final anticipated adjusted offense level is between 37 and ~~25~~ 21 [handwritten], after the anticipated 3 level adjustment for acceptance of responsibility and depending on the Court's rulings discussed in Paragraph 8 above.

10.     The Defendant understands that there is no agreement as to the Defendant's criminal history or criminal history category, and that the Defendant's criminal history could alter the Defendant's offense level if the Defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines (other than those stated in ¶ 8, supra) will be raised or are in dispute.

12.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Both parties are free to recommend any lawful sentence.

### Obligations of the United States Attorney's Office

13.     Following the Defendant's plea of guilty to the offense charged in Count One of the Superseding Indictment, and the imposition of sentence for that offense, the government agrees to move to dismiss all open counts as to the Defendant, with prejudice, pursuant to Federal Rule of Criminal Procedure 48(a).

### Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

      b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

      c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

      d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

15. The Defendant agrees not to commit any offense in violation of federal, state or local law between the date of this agreement and sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, (ii) fails to accept personal responsibility for the offense conduct in this case by failing to acknowledge guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw the Defendant's guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any

other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw the Defendant's guilty plea, and will remain bound to fulfill all of the Defendant's obligations under this agreement. The Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: Zachary A. Myers and
Sandra Wilkinson
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1/13/16
Date

Jonathan M. Went

I am Jonathan M. Went's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1/14/16
Date

Michael D. Montemarano, Esq.

## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true, and if this case had proceeded to trial the government would have proven them beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

**Jonathan M. Went** ("**WENT**"), a/k/a "Jon Maxx," a/k/a "Max Out," age 31, was a resident of Maryland, formerly Massachusetts.

Beginning on or about March 6, 2014 and continuing through on or about March 7, 2014, in the District of Maryland, **WENT** conspired with co-defendant Rayvon O. Archibald ("ARCHIBALD"), a/k/a "PMoney," a/k/a "Scoobie," a/k/a Keyvon Malone, to knowingly harbor, transport, provide or obtain a minor female (hereinafter "Girl 1") to engage in commercial sex acts. Having a reasonable opportunity to observe Girl 1, **WENT** recklessly disregarded the fact that "Girl 1" was less than eighteen years old.

Girl 1 lived with her mother in New York City, New York. In March 2014, Girl 1 was 13 years old. On March 5, 2014, ARCHIBALD and L.M. met Girl 1 in New York and provided her with alcohol and marijuana. At or about 5:20 a.m., L.M. purchased bus tickets for Girl 1, ARCHIBALD, and L.M. to travel from New York City to Baltimore.

At or about 6:11 a.m. on the same day, ARCHIBALD called **WENT** at **WENT**'s apartment. According to Megabus records, the bus was scheduled to leave at 6:30 a.m. and arrive at or about 9:40 a.m. in White Marsh, Maryland. ARCHIBALD, L.M. and Girl 1 took a cab from there to **WENT**'s apartment in Gwynn Oak, Maryland.

At or about 1:18 p.m., **WENT** utilized an iPad to conduct searches on Backpage and for information about female escorts as well as other searches such as for a new car – a purchase **WENT** had been previously discussing with his girlfriend S.C.

At or about 1:57 p.m. on the same day, S.C.'s iPad, which she had given to **WENT**, and which **WENT** allowed **ARCHIBALD** to also use, was used to create the following ad on Backpage

> "New To Town BestDeal On Backpage – 21. I am independent companion who truly loves provi unforgettable experience that is hot, sexy and CALL me, i'm waiting. If Exotic and Erotic is wh and Un.rushed sessison more girls we like open up and and have fun so dont wait 617-894-0919. …. Location Woodlawn, Gwynn Oaks."

According to the records of third party providers, the advertisement was posted from **WENT**'s residence, and listed a phone number used by **WENT** (617-894-0919) (hereinafter "0919" number). Backpage posted the advertisement at or about 2:08 p.m. Thereafter, there were communications between the 0919 number and potential customers who responded to the advertisement for commercial sex through at least midnight.

At or about 10:34 p.m. on March 6, 2014 Girl 1 used **WENT**'s iPhone to secretly send iMessages to her mother. The Apple ID associated with the iPhone is jmwent@gmail.com; the device owner name is "Jon's iPhone;" and the number is 857-212-9933. Girl 1 wrote to her mother, "Mommy I fucked up but I can't come home i dnk how he punched me in my face cuz his money for dope wasn't the full deal Im suppose to be getting clients but can't Im in Boston." "We took a bus the one you can get from 34th st 11th ave." "Please hurry up and reply." The mother then reported her daughter missing to the police.

On March 7, 2014, at or about 8:22 a.m., Girl 1 secretly left the apartment and placed a 911 call from Went's iPhone (857-212-9933). The police found Girl 1 at a nearby intersection, Essex Road and Wilmont Drive. Girl 1 stated that she had been held against her will inside 6700 Wilmont Drive and that there should be two males and a female inside the location. Girl 1

identified her captor as "P-Money" (ARCHIBALD) and stated that he had assaulted her. The police responded to **WENT**'s residence and thereafter arrested **WENT**, **ARCHIBALD** and L.M.

Pursuant to a state search warrant, multiple electronic devices were recovered from **WENT**'s apartment including the iPhone and the iPad discussed above. The police also found a handwritten note stating "half hour $100; hour $175," which is consistent with the prices paid for commercial sex acts, and with what L.M. and Girl 1 had related to law enforcement they were told by Archibald.

On March 6, 2014, Girl 1 engaged in at least one commercial sex act with the knowledge and assistance of **WENT** and **ARCHIBALD**. Girl 1 was instructed to meet clients in the living room of **WENT**'s apartment. Several came to the apartment. Although Girl 1 denied engaging in any sex act to the police, a used condom was recovered from the apartment containing the DNA of both Girl 1 and a commercial sex customer (who has been fully identified by law enforcement). The commercial sex customer admitted to law enforcement that he went to the apartment and engaged in oral sex with a female in the living room of the apartment and did not see any men while he was there.

Both Girl 1 and L.M. would independently testify that one customer who came to the apartment demanded his money back because Girl 1 was too young. L.M. and Girl 1 gave the money back to the customer. When L.M. told ARCHIBALD what had happened, ARCHIBALD slapped L.M. and Girl 1. According to these witnesses, from that point on, ARCHIBALD instructed that the money from any customer be slid under the bedroom door so that it could not be returned to any customer. At times during the conspiracy, ARCHIBALD and **WENT** were either in the bedroom or hiding in the closet of the same bedroom.

During the conspiracy, the sex trafficking acts of recruiting, enticing, harboring, transporting, providing or obtaining were in or affecting interstate commerce.

During an interview soon after his arrest, **WENT** falsely denied involvement in or knowledge of Girl 1 being caused to engage in commercial sex, stating specifically that he did not know prostitution was happening in his home. **WENT** falsely stated that he was in his room or asleep the whole time people were in his house.

During the investigation, law enforcement recovered evidence from various search warrants of Internet Service Providers including Facebook, Instagram, Backpage, Craigslist, Google, Yahoo and forensically analyzed the devices found in **WENT**'s apartment. From this information, law enforcement recovered evidence that **WENT** was involved in commercial sex activities beginning as early as January 2014, using Craigslist and Backpage, and knew that ARCHIBALD has claimed to be engaged in the commercial sex trade as early as August 2012. During a subsequent interview by law enforcement, **WENT** falsely denied communicating directly with ARCHIBALD about sex trafficking and falsely claimed that he never posted a Backpage ad for commercial sex.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

*Jonathan Went*  1/13/16
Jonathan M. Went
Defendant

I am Jonathan M. Went's attorney. I have carefully reviewed the statement of facts with him.

_____   1/14/16
Michael D. Montemarano, Esquire